# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Cameron Terral Thomas,

    Petitioner

v.

Warden of High Desert State Prison,

    Respondent

Case No.: 2:22-cv-02030-JAD-EJY

**Order Denying Petition for Habeas Relief, Granting a Certificate of Appealability on Ground One, and Closing Case**

[ECF No. 1]

Petitioner Cameron Terral Thomas, who is serving forty years to life in prison, brings this counseled federal habeas petition under 28 U.S.C. § 2254 to challenge his 2016 Nevada state-court convictions for sexual assault, lewdness, and attempted lewdness against several victims under fourteen years of age.[1]  Thomas alleges that the trial court prohibited him from presenting evidence supporting his defense and that his trial counsel was ineffective.[2]  Having evaluated the merits of those claims, I find that habeas relief is not warranted, so I deny Thomas's petition.  But I find that reasonable jurists could debate the prejudice that Thomas suffered from the trial court's limitation of defense evidence, so I grant a certificate of appealability on ground one.

---

[1] ECF No. 5-13.

[2] ECF No. 1.

**Background**

**A.      The facts underlying Thomas's convictions**[3]

Thomas and his wife Jennifer[4] lived in Las Vegas, Nevada with their children when the events at the center of Thomas's trial occurred.  Thomas worked as an assistant director at a local daycare, Kids 'R' Kids, and then later as a director at another local daycare, Bright Child Learning Center.  Kashonda Williams, who went by the name "Kay," had known Thomas since they were children, and Thomas got Kay a job at Kids 'R' Kids.  April Reed[5] also worked at Kids 'R' Kids and began a romantic relationship with Kay in 2005 after meeting her at the daycare.  April had four daughters, including A.P. and Z.F. [6]  Kay, April, and April's four daughters became close friends with the Thomas family, and the families would often spend time at each other's houses.  Thomas was named the godfather of April's daughters.

Kay, April, and April's daughters moved in with the Thomas family for a month during a time of financial hardship.  Around that same time, Thomas had taken out a loan to help Kay.  A few months into Kay's repayment of the loan, she told Thomas that she could not afford a payment.  Thomas had to scramble to make the payment on time, straining Thomas's and Kay's relationship.  This distress—along with the family having already stayed their preplanned month

---

[3] These facts are taken from the transcripts of Thomas's 16-day jury trial.  Notably, these transcripts were not filed in chronological order.  ECF Nos. 2-11, 2-12, 21-1, 5-8, 5-9, 4-10, 4-11, 4, 4-1, 4-2, 4-3, 4-4, 4-12, 4-13, 2-8, 2-9, 2-10, 4-14, 5, 5-1, 5-3, 5-4, 5-2, 5-5, 5-6, 4-8.  For simplicity's sake, I cite to these exhibits generally for this entire fact section.  I make no credibility findings or other factual findings regarding the truth or falsity of this summary of the evidence.  My summary is merely a backdrop to my consideration of the issues.

[4] Because the petitioner and his wife share a last name, I refer to Mrs. Thomas as Jennifer throughout this order.  No disrespect is intended by doing so.

[5] I also refer to April and Kay by their first names to stay consistent with how they were commonly referred to during trial.

[6] I identify witnesses who were minors at Thomas's trial by their initials.

with the Thomas family—resulted in Kay, April, and April's four daughters moving in with another family before eventually relocating to Arizona.

### 1.    April's daughter A.P. testified to numerous instances of sexual abuse by Thomas.

A.P., who was seventeen years old at the time of Thomas's trial, testified that Thomas had sexually abused her several times.  She recounted that, when she was six or seven, Thomas "put his hand in [her] underwear and he put his fingers in [her] vagina."  The next day, Thomas told A.P. "that [she] shouldn't say anything about what happened the night before and that he wouldn't do it again."  A.P. testified to at least ten additional instances of abuse, most of which involved Thomas successfully or attempting to perform oral sex or vaginally penetrate her with his fingers or penis.  A.P. averred that these occurrences happened at Thomas's house, her house, and in his car.

As one example, A.P. testified that, during the summer before she entered fifth grade, she was attending a Kids 'R' Kids summer camp.  She explained that Thomas took her home from camp early one day because she wasn't feeling well.  Thomas followed A.P. into her room, pulled down her pants and underwear, and "put his mouth on her vagina."  A.P. testified that this incident took place on the day that Michael Jackson died because "all of the news channels were like going crazy."  Thomas later testified that he never took A.P. home from camp in the middle of the day because he would have been working.  He also presented evidence that he could not have taken A.P. home on that specific day, June 25, 2009, because Kids 'R' Kids records and pictures showed that he was on a field trip to the zoo that day.  And the owner of Kids 'R' Kids testified that, according to the camp's records, A.P. didn't attend Kids 'R' Kids at all on that date.

Thomas's wife Jennifer also testified at trial. Much of her testimony was focused on discrediting some of the circumstances surrounding the alleged abuse that A.P. had discussed. For example, A.P. testified that on various weekend mornings after A.P.'s family would spend the night at the Thomases' house, Thomas, his children, A.P., and A.P's sisters would watch cartoons at the foot of Thomas's bed. On those mornings Thomas would call A.P. up to the top of the bed, pull down her underwear, and "would put his penis in [her] vagina." Thomas and Jennifer later testified that the kids would never watch cartoons in their bedroom on weekend mornings, explaining that the children would watch cartoons in the living room instead.

### 2.    A.P.'s younger sister Z. F. testified that she was also abused by Thomas, and she reported the abuse to a school administrator.

A.P.'s younger sister, Z.F., who was fifteen years old at the time of Thomas's trial, also testified to various instances of sexual abuse by Thomas. Z.F. testified that Thomas performed oral sex on her, touched her vagina, attempted to vaginally penetrate her, and pulled her hand toward his penis. Z.F. also explained that, after moving to Arizona, she told A.P. that someone had been touching her. A.P. guessed that it was Thomas. Z.F., who was nine years old at the time, then told Amanda Rand, the acting principal at her elementary school, "that a family friend had had sex with her, . . . and that he had put his penis in her vagina[,] and she mentioned that she thought it had happened to her sister as well." Z.F. identified Thomas as the person who sexually abused her.

Phoenix Police Officer James Sink testified that he interviewed Z.F. at her school. Z.F. told Officer Sink that "when she lived in Las Vegas[,] . . . she had been sexually abused by a family friend named Cameron Thomas . . . , and the abuse consisted of him placing his penis in

her vagina." Z.F. also told Phoenix Police Detective Kathleen Vangordon about three instances of abuse involving Thomas, all of which were consistent with her trial testimony.

### 3. After Thomas was arrested and in response to their parents' inquiries, two more children came forward with sexual-abuse allegations against Thomas.

The prosecution also elicited testimony from two more children who told their parents that Thomas had sexual contact with them. After hearing about Thomas's arrest, Ramona Slattery asked her daughter M.S. if Thomas had ever touched her inappropriately. M.S. "said that he would . . . cuddle with her when all the kids were upstairs, kiss her on the cheek and tell . . . her that she loved him. Rub her back and then he would put [his] hand down her shirt." M.S. also told her mom that Thomas would "put his hands down her pants," made her touch her vagina while he watched, and told her that "he wanted [her] to sleep in bed with him naked." M.S., who was fourteen years old at the time of Thomas's trial, testified that Thomas would occasionally babysit her overnight and that, on at least two occasions, he inappropriately touched her while she was sitting on his lap. Faiza Ebrahim testified that she conducted a forensic interview of M.S, during which M.S. told Ebrahim that Thomas "touched her on her . . . left buttocks cheek and . . . in between her breast and underarm area as well as between her thigh and vaginal area."

Cheryl Barbian testified that her daughter M.S.B had attended Kids 'R' Kids and Bright Child Learning Center. When Barbian learned of Thomas's arrest on the news, she asked M.S.B. whether he ever touched her private areas. M.S.B. told Barbian that he had. M.S.B., who was thirteen years old at the time of Thomas's trial, testified that Thomas had touched her vagina over her clothes on more than one occasion while she was at daycare and was sitting on Thomas's lap. Martha Mendoza, who conducted a forensic interview of M.S.B., testified that

M.S.B. told her that Thomas used his hand "to touch her bathroom part" on more than one occasion while she was sitting on his lap.

### 4. Thomas's defense revolved around the notion that the child victims falsified their accounts because of parental pressure or suggestibility.

Thomas testified and denied all of allegations against him. In addition to presenting various character witnesses and having Jennifer testify to explain the improbability of some of the victims' testimonies, Thomas presented the expert testimony of Dr. William O'Donohue, who testified about false memories due to suggestibility. Thomas also presented the testimony of Bonnie Hart, the owner and director of Kids 'R' Kids, who testified that there were 24 cameras at the daycare center that were constantly recording.

Thomas argued that April made up the allegations against him and influenced A.P. and Z.F. into accusing him to get revenge on him for kicking her family out of his house or for his treatment of Kay after she was unable to repay Thomas's loan. He further contended that M.S.'s and M.S.B.'s accusations were merely the result of suggestibility, given that they did not make any accusations against him until after their mothers asked pointed questions about him. Thomas also implied that the victims' families had a financial incentive to falsely accuse him because they filed a civil lawsuit against the daycare and received money when the parties settled.

**B. Procedural history**

Thomas was convicted of three counts of sexual assault with a minor under the age of fourteen, eight counts of lewdness with a child under the age of fourteen, and two counts of attempted lewdness with a child under the age of fourteen.[7] Thomas was sentenced to forty

---

[7] ECF No. 5-13.

6

years to life in prison.[8]  Thomas appealed, and the Nevada Supreme Court affirmed in part, reversed in part, and remanded, concluding that two of the lewdness convictions were impermissibly redundant.[9]  Thomas filed a state petition for postconviction relief from his remaining convictions.[10]  The state court held an evidentiary hearing[11] and ultimately denied the petition.[12]  Thomas appealed, and the Nevada Court of Appeals affirmed.[13]

Thomas timely filed his instant counseled federal habeas corpus petition.[14]  I previously dismissed ground eight of the petition.[15]  Thomas's remaining seven grounds allege trial-court error and the ineffective assistance of his trial counsel:

- Ground One: Thomas's right to fundamental fairness was violated when the trial court precluded evidence that April had physically abused Z.F.;
- Ground Two: Trial counsel was ineffective for failing to challenge the trial judge's implied bias against the defense;
- Ground Three: Trial counsel was ineffective for failing to preclude or object to the state's introduction of the civil lawsuit's settlement agreement;
- Ground Four: Trial counsel was ineffective for failing to object to highly prejudicial testimony;
- Ground Five: Trial counsel was ineffective for failing to object to the forensic examiners' hearsay statements concerning M.S. and M.S.B.;

---

[8] *Id.*

[9] ECF No. 6-14.

[10] ECF No. 6-1.

[11] ECF No. 6-11 (evidentiary-hearing transcript).

[12] ECF No. 6-8.

[13] ECF No. 6-15.

[14] ECF No. 1.

[15] ECF No. 31; *see also* ECF No. 15 (defendants' motion to dismiss); ECF No. 29 (Thomas's motion to voluntarily dismiss ground eight).

- Ground Six: Trial counsel was ineffective for failing to object to jury instructions concerning reasonable doubt and equal-and-exact justice; and

- Ground Seven: The cumulative effect of trial counsel's errors warrants reversal of Thomas's conviction.[16]

## Discussion

### A.    Review under the Antiterrorism and Effective Death Penalty Act (AEDPA)

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may grant habeas relief with respect to that claim only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding."[17]    A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[18]    And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[19]    Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context where it should apply" or "license federal courts to treat the failure

---

[16] *See generally* ECF No. 1.    Respondent filed an answer to those remaining seven grounds, ECF No. 38, and Thomas replied.    ECF No. 50.

[17] 28 U.S.C. § 2254(d).

[18] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[19] *White v. Woodall*, 572 U.S. 415, 425–27 (2014).

to do so as error."[20]  The "objectively unreasonable" standard is difficult to satisfy;[21] "even 'clear error' will not suffice."[22]

Habeas relief may be granted only if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[23] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[24]  "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[25]  AEDPA "thus imposes a 'highly deferential standard for evaluating state-court rulings' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[26]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[27]  The petitioner bears the burden of proving

---

[20] *Id*. at 425–26.

[21] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[22] *Wood v. McDonald*, 575 U.S. 312, 315 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[23] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[24] *Id*. at 103.

[25] *Id*. at 101.

[26] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[27] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

1  by a preponderance of the evidence that he is entitled to habeas relief,[28] but state-court factual

2  findings are presumed correct unless rebutted by clear and convincing evidence.[29]

3  **B.    Habeas relief isn't warranted for ground one—contending that the trial court unconstitutionally prohibited Thomas from presenting evidence that supported his**

4  **defense theory—but it's close, so the court grants a certificate of appealability.**

5      Thomas alleges in ground one of his habeas petition that he was deprived of his right to

6  fundamental fairness in violation of the Fifth, Sixth, and Fourteenth Amendments to the United

7  States Constitution when the trial court prohibited him from presenting his defense theory that

8  A.P. and Z.F. fabricated the allegations against him to deflect attention away from April's

9  physical abuse of Z.F.[30]  Thomas originally planned to present evidence that, in December of

10  2010, April physically abused Z.F. by whipping her with an electrical cord.[31]  The state moved in

11  limine to preclude this evidence, and the trial court granted the motion, finding that April's

12  physical abuse was "not relevant, [and] the allegations concerning a possible motive to fabricate

13  [were] mere speculation."[32]

14      During trial and before April's testimony, Thomas's trial counsel moved to reconsider

15  that ruling, arguing that the evidence was relevant to Thomas's defense that Z.F. was

16  motivated—either on her own or by her mother—to make up the sexual allegations against him

17  to deflect attention from her mother's abuse.  He sought to include the evidence to discredit

18  April's testimony and to show that Z.F.'s accusations against Thomas were not made

19  spontaneously to the principal of her school—which was the state's narrative at trial—but rather

20

---

21  [28] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

    [29] 28 U.S.C. § 2254(e)(1).

22  [30] ECF No. 1 at 14.

23  [31] ECF No. 4 at 52–53.

    [32] ECF Nos. 19-8, 20–8.

were made only after Z.F. was called to the principal's office to discuss April's physical abuse.[33] The state argued that there was no credibility issue regarding April's abuse of Z.F. because April had admitted the abuse, so there was no reason for her to be untruthful about Thomas.[34] The trial court denied the reconsideration motion.[35] During closing arguments, the state argued that Thomas failed to present any evidence showing that the victims had a motive to lie.[36]

### 1. Because the Nevada Supreme Court overlooked Thomas's constitutional claim in ground one, it is not procedurally defaulted and AEDPA review applies.

Respondents argue that this claim is procedurally defaulted because the Nevada Supreme Court refused to reach the merits of it based on adequate and independent grounds for denial of relief.[37] In a footnote of its order on direct appeal, the Court held that it was "unable to evaluate" Thomas's argument "that the district court erred in granting the state's motion to preclude evidence that [April] was abusing Z.F." because Thomas "failed to provide the district court's dispositions, either in the form of orders or hearing transcripts, in order for [the Court] to determine the existence of error."[38]

In December 2022, I ordered the respondent to raise all procedural defenses in a motion to dismiss and advised that "[p]rocedural defenses omitted from such motion to dismiss will be subject to potential waiver."[39] Respondent acknowledges that this court required it to raise all

---

[33] ECF No. 4 at 52–53, 55.

[34] *Id*. at 57.

[35] *Id*.

[36] *See*, *e.g.*, ECF No. 5-5 at 175.

[37] ECF No. 38 at 16.

[38] ECF No. 6-14 at 11.

[39] ECF No. 7 at 3.

procedural defenses in its motion to dismiss but admits that it "overlooked" this one.[40]  I'm

inclined to find that the respondent waived this defense, but even if it was raised at the

appropriate stage in these proceedings, I would reject it.

In Thomas's opening brief on direct appeal, he argued that he was "denied his

fundamental right to present a theory of defense in violation of the Fifth, Sixth, and Fourteenth

Amendments to the United States Constitution."[41]  He argued that the court erred by barring

evidence of April's abuse of Z.F. and explained how that decision stymied his ability to support

his defense theory that April may have influenced Z.F. to concoct incidents involving Thomas to

deflect from April's physical abuse.  Though the Nevada Supreme Court did briefly address the

underlying district-court decision to preclude that evidence, it did not discuss the constitutional

contours of Thomas's claim—that his right to present a defense was thwarted.  So I find that the

Nevada Supreme Court did not address this ground and I deny respondent's request to find it

procedurally defaulted.[42]

Even though the Nevada Supreme Court did not address this ground in its order on

Thomas's direct appeal, I find that AEDPA review is still appropriate.  "When a federal claim

has been presented to a state court and the state court has denied relief, it may be presumed that

the state court adjudicated the claim on the merits in the absence of any indication or state-law

---

[40] ECF No. 38 at 16 n.3.

[41] ECF No. 6-13 at 24.

[42] This finding is supported by Justice Silver's dissenting opinion in the Nevada Supreme Court's order denying en banc reconsideration of Thomas's direct appeal.  ECF No. 5-11 at 3.  Justice Silver concluded that the Court's order "overlooked and did not consider the district court's continual refusal to allow appellant to present to the jury factual evidence of [April's] substantiated physical abuse" and expressed the belief that "this refusal may have prevented Thomas from proving his theory of defense and resulted in skewing the facts surrounding disclosure."  *Id.* (emphasis omitted).

procedural principles to the contrary."[43]  Because the Nevada Supreme Court's opinion "does not

come accompanied with [the] reasons" why it presumably denied the constitutional aspects of

this ground, this court "'look[s] through' the unexplained decision to the last related state-court

decision that does provide a relevant rationale."[44]  This court "then presume[s] that the

unexplained decision adopted the same reasoning."[45]  However, because the trial court's

determination that April's physical abuse of Z.F. was irrelevant was an unreasonable

determination of the facts, as is discussed *infra*, I review this ground de novo.[46]

### 2.    *The Constitution protects a defendant's right to present a complete defense.*

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair

opportunity to defend against the [s]tate's accusations."[47]  "[T]he Constitution [also] guarantees

criminal defendants 'a meaningful opportunity to present a complete defense.'"[48]  A defendant's

opportunity to be heard "would be an empty one if the [s]tate were permitted to exclude

competent, reliable evidence . . . when such evidence is central to the defendant's claim of

---

[43] *Harrington*, 562 U.S. at 99.

[44] *Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

[45] *Id.*

[46] *See Panetti v. Quarterman*, 551 U.S. 930, 948 (2007) ("As a result of [the state court's] error, our review of petitioner's underlying . . . claim is unencumbered by the deference AEDPA normally requires").

[47] *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Washington v. Texas*, 388 U.S. 14, 19 (1967) (explaining that an accused "has the right to present his own witnesses to establish a defense" and that "[t]his right is a fundamental element of due process of law"); *DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001) ("The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense.").

[48] *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).

1    innocence."[49]  This is because, "[i]n the absence of any valid state justification, exclusion of . . .

2    exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case

3    encounter and 'survive the crucible of meaningful adversarial testing.'"[50]

4         The United States Supreme Court has "never questioned the power of [s]tates to exclude

5    evidence through the application of evidentiary rules that themselves serve the interests of

6    fairness and reliability—even if the defendant would prefer to see that evidence admitted."[51]

7    The Supreme Court has specifically indicated its approval of "well-established rules of evidence

8    [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other

9    factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."[52]  And

10   evidentiary rules do not violate a defendant's constitutional rights unless they "infringe upon a

11   weighty interest of the accused and are arbitrary or disproportionate to the purposes they are

12   designed to serve."[53]  "In general, it has taken 'unusually compelling circumstances . . . to

13   outweigh the strong state interest in administration of its trials.'"[54]  Indeed, "[o]nly rarely ha[s

14   the Supreme Court] held that the right to present a complete defense was violated by the

15   exclusion of defense evidence under a state rule of evidence."[55]

16

17

---

18   [49] *Id.*

     [50] *Id.* at 690–91 (quoting *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

19   [51] *Id.* at 690; *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998) ("A defendant's right
20   to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions.").

     [52] *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006).

21   [53] *Id.* at 324 (cleaned up); *see also Scheffer*, 523 U.S. at 315 (explaining that the exclusion of
     evidence under a state evidentiary rule is unconstitutional only where it "significantly
22   undermined fundamental elements of the accused's defense").

23   [54] *Moses v. Payne*, 555 F.3d 742, 757 (9th Cir. 2009) (internal quotation marks omitted).

     [55] *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (explaining that a violation had been found when
     the exclusion of defense evidence was based on a state rule of evidence that did not rationally

The Court of Appeals for the Ninth Circuit has "traditionally applied a balancing test to determine whether the exclusion of evidence in the trial court violated [a] petitioner's due process rights, weighing the importance of the evidence against the state's interest in exclusion."[56]  In assessing these interests, the court looks to the following factors: "(1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense."[57]

### 3. The trial court erred when it precluded evidence that supported Thomas's defense theory.

The trial court determined that evidence of April's physical abuse of Z.F. lacked relevancy under Nevada law, so the balancing test weighs Nevada's interest in excluding irrelevant evidence against Thomas's due-process rights.  The excluded evidence had significant probative value.  Evidence that April physically abused Z.F. would have allowed the defense to argue that Z.F., the first formal accuser, made up the allegations of sexual abuse against Thomas because Z.F.—either on her own or in compliance with April's demands—wanted to deflect attention from her mother's physical abuse.  This evidence also would have refuted the trial testimony that Z.F. spontaneously told her principal that Thomas had sexually abused her.  The supposed spontaneity of Z.F.'s accusations, which painted a distorted picture at trial,

---

serve any discernible purpose, was arbitrary, was unexplained, or could not be rationally defended).

[56] *Chia v. Cambra*, 360 F.3d 997, 1003 (9th Cir. 2004).

[57] *Id*. at 1004.

undoubtedly harmed Thomas's defense.  The probative value of this evidence is clear, making the trial court's finding that the evidence was irrelevant entirely unreasonable.[58]

The four remaining factors also favor the conclusion that precluding this evidence was error.  The evidence was reliable because there was no dispute that April's physical abuse of Z.F. was substantiated.  The jury could evaluate whether April's physical abuse of Z.F. amounted to a motive for fabricating the allegations against Thomas, and each party had the opportunity to test the theory's reliability during their examinations of April.  And this evidence was not cumulative; there was no other evidence presented at trial that April physically abused Z.F.

Finally, April's abuse of Z.F. amounted to a major part of what otherwise would have been Thomas's best defense.  The only available defense for Thomas was that the children were falsifying the allegations against him.  Because the trial court prevented Thomas from presenting a defense that A.P and Z.F. may have falsified their allegations out of a desire to deflect law enforcement's attention away from April, Thomas was forced to present a defense that the falsifications came from April being upset with Thomas over financial issues or for the sake of monetary compensation—decidedly weaker theories.  In weighing these factors, I find that the trial court unreasonably excluded evidence of April's physical abuse of Z.F. given its impact on Thomas's constitutional right to present a defense.[59]

---

[58] *See* Nev. Rev. Stat. § 48.015 ("'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.").

[59] *Lunbery v. Hornbeak*, 605 F.3d 754, 762 (9th Cir. 2010) ("[A]t times a state's rules of evidence cannot be mechanistically applied and must yield in favor of due process and the right to a fair trial.").

### 4.    The trial court's error did not have an injurious influence on the jury's verdict, so habeas relief is not warranted.

My finding that the trial court violated Thomas's constitutional rights does not end this inquiry.  Habeas relief is available only if the violation had a "substantial and injurious effect or influence in determining the jury's verdict."[60]  And here, I do not find that this standard has been met.  Although evidence of April's physical abuse of Z.F. would have supported Thomas's defense that Z.F.—and by association, A.P.—fabricated the allegations against Thomas to deflect attention from her mother, the two other victims in this case were completely unrelated to Z.F., A.P., and April.  Because M.S.'s and M.S.B.'s accusations were similar to Z.F.'s and A.P.'s accusations against Thomas and the evidence at issue here was inapplicable to M.S. and M.S.B., I find that Thomas fails to demonstrate that the presentation of this evidence would have influenced the jury's verdict.  Indeed, without a similar basis to discredit M.S. and M.S.B.,[61] these victims' testimonies strengthened Z.F.'s and A.P.'s testimonies, making any argument of fabrication on the part of Z.F. and A.P. less likely.  Given this lack of prejudice, Thomas is not entitled to federal habeas relief on ground one.[62]

## C.    Thomas isn't entitled to relief on his remaining claims alleging ineffective assistance of counsel.

Thomas's remaining grounds allege that his trial counsel was ineffective in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  The right to

---

[60] *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).

[61] Notably, the jury did not by Thomas's other argument that the victims fabricated the allegations for monetary gain.

[62] As discussed *infra*, at p. 43–44, reasonable jurists could disagree with this conclusion, so I grant a certificate of appealability for this ground.

counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[63]  Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[64]  In *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim (IAC) requires a petitioner to show that (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[65] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[66]

"A reasonable probability is [one] sufficient to undermine confidence in the outcome."[67] Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[68]  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[69]  The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[70]

---

[63] *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

[64] *Id*. (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[65] *Id*. at 690.

[66] *Id*. at 694.

[67] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

[68] *Strickland*, 466 U.S. at 689.

[69] *Richter*, 562 U.S. at 104.

[70] *Id*.

1    If a state court previously adjudicated the IAC claim under *Strickland*, establishing that

2  the decision was unreasonable is especially difficult.[71]  *Strickland* and § 2254(d) are highly

3  deferential, and when the two apply in tandem, review is doubly so.[72]  "When § 2254(d) applies,

4  the question is not whether counsel's actions were reasonable [but] . . . whether there is any

5  reasonable argument that counsel satisfied *Strickland*'s deferential standard."[73]

6

7    **1.    Thomas's ground-two IAC claim based on the trial judge's alleged bias does not entitle him to habeas relief.**

8    In ground two, Thomas alleges that his trial counsel was ineffective for failing to

9  challenge the unconstitutional implied bias of the trial judge.[74]  He asserts that his counsel should

10  have objected to the judge presiding over this case because the judge's husband prosecuted child-

11  sex crimes for the Clark County District Attorney's Office.[75]  Thomas maintains that, "[u]nder

12  such circumstances, the trial judge would have had an invested interest in the successful

13  prosecution of cases" like his and asserts that the trial judge "overwhelmingly favored the

14  state."[76]

15    Thomas contends that the judge's behavior during trial confirms her bias against the

16  defense.  During Thomas's postconviction evidentiary hearing, Thomas's trial counsel testified

17

18  ———————————————

19  [71] *See id.* at 104–05.

20  [72] *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential." (cleaned up)).

21

22  [73] *Richter*, 562 U.S. at 105.

    [74] ECF No. 1 at 27.

23  [75] *Id.* at 29.

    [76] *Id.* (cleaned up).

1  that he "definitely felt that there were three prosecutors in the room: two DAs and the judge."[77]

2  According to Thomas's trial counsel, "in looking back at it, [he] definitely should have said more

3  about the way that Mr. Thomas was being treated and [he] was being treated" and filed a motion

4  regarding judicial bias.[78]  Thomas's trial counsel had "no reason as to why [he] didn't" file such

5  a motion other than his concern that the judge would be "extremely angry with [him] and

6  possibly take it out on [his] client."[79]

7         There were "a number of reasons" why Thomas's trial counsel felt that the trial judge

8  was biased against him and his client: she made "it seem like [he] didn't know what [he] was

9  doing" in front of the jury, she was constantly "hassl[ing]" the way he did things, she did not

10  fully consider his objections, and she "yelled at [him] so much so that her face turned red."[80]

11  Thomas's trial counsel testified that the trial judge's decision to distort Z.F.'s accusation—from

12  a statement made to the principal and law enforcement who were looking into her mother's

13  physical abuse to a spontaneous accusation against Thomas—showed her bias given that this

14  decision "was a big blow to [the] defense."[81]  Thomas's trial counsel testified that he had "never

15  experienced . . . a judge literally ma[king] up facts in order to explain their ruling."[82]

16

17

18

19

20  [77] ECF No. 6-11 at 12 (cleaned up).

21  [78] *Id*. at 12, 40.

    [79] *Id*. at 11, 16.

22  [80] *Id*. at 20–21, 31.

23  [81] *Id*. at 12, 39.

    [82] *Id*. at 16 (cleaned up).

Thomas also contends that a review of the objections at trial shows that the judge sided with the state more often than she sided with the defense.[83]  And at one point, the judge objected to a question that defense counsel asked a witness on direct examination:

| [Defense counsel]: | Now, there was testimony regarding [redacted] never coming over alone. Why - - I mean if these were your godchildren, why wouldn't they come alone? |
| The Court: | I am going to object. I'm not going to object. I'm sorry. What is your objection? I am so sorry. It's become a long trial. I'm so sorry. The judge apologizes. |
| [Prosecutor]: | And Judge, I'm going to probably agree with you about foundation and speculation. |
| The Court: | No. That's not fair. What was your objection? |
| [Prosecutor]: | Foundation. Speculation. |
| The Court: | Yes. Okay. I'm going to sustain. Could you rephrase that if you could, [Thomas's trial counsel]? I know it's hard and the Judge can't rephrase. Just try again and let me listen. I'm focusing. Sorry.[84] |

     ***a.    The Nevada Court of Appeals denied Thomas relief on his trial-judge-bias IAC claim.***

In affirming the state court's denial of Thomas's state habeas petition, the Nevada Court of Appeals found that Thomas's counsel was not ineffective for failing to raise the issue of judicial bias:

---

[83] ECF No. 1 at 29.

[84] ECF No. 5-5 at 85–86; *see also* ECF No. 6-11 at 38 (defense counsel's evidentiary-hearing testimony about the judge's objection).

First, Thomas claimed counsel was ineffective for failing to challenge the trial judge's implied bias on the ground that the judge "altered the facts of the trial so the State could present" a victim's allegations of abuse as spontaneous.

. . .

The district court conducted an evidentiary hearing as to this claim. Although counsel testified at that hearing that he believed he should have filed a motion to disqualify the trial judge, the district court also reviewed video and transcripts from the relevant trial court hearings and concluded that the trial judge was "impartial, fair, thoughtful, and reasonable" and there was no evidence of actual or implied bias. Thomas failed to provide this court with video recordings or transcripts from these trial court hearings, and thus, we presume that this material supports the district court's determination. *See Johnson v. State*, 113 Nev. 772, 776, 942 P.2d 167, 170 (1997) ("It is appellant's responsibility to make an adequate appellate record."); *see also Riggins v. State*, 107 Nev. 178, 182, 808 P.2d 535, 538 (1991) (stating "the missing portions of the record are presumed to support the district court's decision"), *rev'd on other grounds by Riggins v. Nevada*, 504 U.S. 127 (1992). In light of these circumstances, Thomas failed to demonstrate a constitutionally intolerable risk of bias. Therefore, Thomas failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome but for counsel's failure to seek disqualification on this ground. Accordingly, we conclude the district court did not err by denying this claim.

Second, Thomas claimed counsel was ineffective for failing to challenge the judge's implied bias on the ground that the judge was married to an attorney who was responsible for the prosecution of child sex abuse cases. Thomas claimed this meant the judge had a vested interest in the successful prosecution of these types of cases, including his own. Thomas did not allege that the judge's husband worked on his case in any capacity, and he failed to explain how the judge's husband's occupation created a vested interest in his case. Thomas thus failed to demonstrate a constitutionally intolerable risk of bias. *See Rippo*, 580 U.S. at __, 137 S. Ct. at 907. Therefore, Thomas failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome but for counsel's failure to seek disqualification on this ground. Accordingly, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing.

Third, Thomas claimed counsel was ineffective for failing to challenge the judge's implied bias on the ground that the judge overwhelmingly favored the State when considering objections during trial and that the judge objected on the State's behalf. Thomas has not demonstrated that either the number of objections that were decided in favor of the State or the three incidents during the three-week trial wherein the judge allegedly objected on the State's behalf presented a constitutionally intolerable risk of bias. *See id.*; *see also In re Petition to Recall Dunleavy*, 104 Nev. 784, 789, 769 P.2d 1271, 1275 (1988) (stating the "rulings and actions of a judge during the course of official judicial proceedings do not establish" that a trial court judge was biased against a party).

Therefore, Thomas failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome but for counsel's failure to seek disqualification on these grounds. Accordingly, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing.[85]

### b. Due process requires the absence of actual or implied judicial bias.

"A fair trial in a fair tribunal is a basic requirement of due process."[86] Fairness "requires an absence of actual bias," but "our system of law has always endeavored to prevent even the probability of unfairness."[87] This "most basic tenet of our judicial system helps to ensure both the litigants' and the public's confidence that each case has been adjudicated by a neutral and detached arbiter."[88] "[W]hen a defendant's right to have his case tried by an impartial judge is compromised, there is structural error that requires automatic reversal."[89]

---

[85] ECF No. 6-15 at 3–5.

[86] *In re Murchison*, 349 U.S. 133, 136 (1955).

[87] *Id.*

[88] *Hurles v. Ryan*, 752 F.3d 768, 788 (9th Cir. 2014).

[89] *Greenway v. Schriro*, 653 F.3d 790, 805 (9th Cir. 2011).

"[T]he floor established by the Due Process Clause clearly requires a . . . judge with no actual bias against the defendant or interest in the outcome of his particular case."[90]  But a due-process violation can occur even as a result of implied basis, which can be inferred in three instances: (1) when a judge "has a direct, personal, substantial pecuniary interest in reaching a conclusion against [one of the litigants]";[91] (2) when a judge becomes "embroiled in a running, bitter controversy" with one of the litigants;[92] or (3) when the judge acts as "part of the accusatory process."[93]  Due process requires recusal whenever "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."[94]  To determine whether this intolerable level of bias exists, courts "ask[] not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in [her] position is likely to be neutral, or whether there is an unconstitutional potential for bias."[95]

> **c.** **Thomas has not shown that the trial judge was unconstitutionally biased, so his counsel was not ineffective for failing to move for the judge's recusal.**

Thomas has not shown that the trial judge was unconstitutionally biased, so trial counsel could not have been ineffective for failing to challenge the judge or any of the judge's rulings on that basis.  Thomas's first contention that the judge was implicitly biased against him because of her husband's profession prosecuting child-sex crimes lacks merit.  As the Nevada Court of

---

[90] *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997).

[91] *Tumey v. Ohio*, 273 U.S. 510, 523 (1927).

[92] *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971).

[93] *In re Murchison*, 349 U.S. at 137; *see also Crater v. Galaza*, 491 F.3d 1119, 1131 (9th Cir. 2007) (noting that the Supreme Court has recognized "only [these] three circumstances in which an appearance of bias—as opposed to evidence of actual bias—necessitates recusal").

[94] *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

[95] *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016) (cleaned up).

1    Appeals reasonably noted, Thomas fails to establish a sufficient connection between the judge's

2    husband's career and the trial judge's own interest.  Thomas's accusations are based entirely on

3    generalizations concerning a marital relationship that he knows nothing about.  Without a

4    showing that the trial judge had a more direct and substantial personal interest in the outcome of

5    Thomas's case, this implied-bias contention falls short.

6         Thomas also hasn't shown that the trial judge's ruling requiring the parties to distort

7    Z.F.'s testimony is evidence of the judge's bias against the defense.  As discussed with respect to

8    ground one, the trial court erroneously disallowed evidence of April's physical abuse of Z.F.,

9    which resulted in the manipulation of Z.F.'s testimony in a manner that was harmful to Thomas's

10   defense.  However, even considering this improper evidentiary ruling in combination with the

11   judge's other actions towards the defense—including Thomas's trial counsel's notion that the

12   judge treated him antagonistically throughout the trial—the Nevada Court of Appeals reasonably

13   determined that Thomas's accusations in this regard fell short of demonstrating implied bias.

14   While the disputes that Thomas's counsel described at the state court's postconviction hearing

15   may paint a picture of a possibly contentious relationship between the trial judge and the defense,

16   Thomas fails to demonstrate that these disputes—and thus the risk of bias—were extraordinary

17   in nature, severity, or duration.  So Thomas hasn't shown that the judge and the defense were

18   "embroiled in a running, bitter controversy" demonstrating implied bias.

19        Nor has Thomas shown that the trial judge's accidental objection to defense counsel's

20   question on direct examination shows intolerable bias.  It is clear from the record that the trial

21   judge immediately acknowledged and remedied that misstep.  So, even though the trial judge's

22

23

singular blunder here could be described as advancing the position of the prosecution,[96] it does not show a manifestation of deep-seated favoritism for the state or that the judge acted as part of the accusatory process.

Because Thomas fails to demonstrate inherent implied bias on the part of the trial judge, the Nevada Court of Appeals' determination that Thomas's trial counsel was not ineffective for failing to raise this issue was neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts. So Thomas is not entitled to federal habeas relief on ground two.

### 2. Thomas's ground-three contention that his counsel was ineffective for failing to preclude evidence of a civil settlement does not entitle him to habeas relief.

In ground three, Thomas alleges that his trial counsel was ineffective for failing to preclude or object to the state's improper introduction of the settlement of a civil lawsuit.[97] Before Thomas's criminal trial commenced, the victims had sued Kids 'R' Kids in a civil suit and received a monetary settlement.[98] The final order in that civil action "dismisse[d] Cameron Thomas completely."[99] Thomas's trial counsel had marked the final settlement order as an exhibit prior to trial.[100]

Outside the presence of the jury on the first day of trial, the state explained that it understood "its obligation that it cannot argue that the civil suit somehow infers any type of

---

[96] *See Crater,* 491 F.3d at 1132 (finding that "the judge did not perform incompatible accusatory and judicial roles" because "[h]e neither acted as a prosecutor nor sought to advance the position of the prosecutor").

[97] ECF No. 1 at 32.

[98] ECF No. 4 at 5.

[99] *Id.* at 8.

[100] *Id.* at 5.

liability or culpability on the defendant's part merely because they settled that civil suit."[101]  But because the defense marked it as an exhibit, the state wanted to know if Thomas's counsel intended to "use it as a means for bias" in his defense.  If so, the state intended to "own it now in opening statements rather than waiting for the defense to bring it up."[102]  Defense counsel responded, "to be 100 percent honest with you, we keep going back and forth on this piece of evidence" because it "cuts both ways."[103]  He stated that while he did not "know if [he was] going to introduce the actual [settlement] order," he did "think [he would] definitely ask the parties about" the filing of the civil lawsuit.[104]  Thomas's counsel then stated that he did not "even know if [he was] going to ask them if they got money" because "[t]hat may take it down a road [he did not] necessarily want to go down."[105]  He added, "honestly, I kind of want to see how the testimony's going before I decide for sure. . . . I do not mention it in my opening."[106]  The trial court clarified that Thomas's trial counsel was going to ask questions about the lawsuit but not necessarily about the final settlement order itself, and Thomas's trial counsel confirmed that was his plan "[a]s it [stood] right [then]."[107]

The trial court ruled that if the defense "open[ed] the door on asking about the civil suit," then the prosecution would be able to discuss the settlement order.[108]  Because Thomas's trial counsel had stated that he was planning on asking at least some questions about the lawsuit, the

---

[101] *Id.*

[102] *Id.* at 5–6.

[103] *Id.* at 6.

[104] *Id.* at 6–7.

[105] *Id.* at 7.

[106] *Id.*

[107] *Id.*

[108] *Id.* at 8–9.

state argued that it should be allowed to mention in its opening statement that there "was a civil

suit and there was a settlement and leave it at that."[109]  The trial court responded, "I think that

would address what he potentially is going to do.  If he opens the door more, th[e]n you

can . . . answer that and then you can do that at closing."[110]

A short time later, the state discussed the civil lawsuit during its opening statement,

telling the jury that the victims had settled with the daycare in return for monetary compensation:

> And what you're going to hear over the course of this trial is that
> there was, in fact, a civil suit related to the day care.  And that yes,
> [A.P., Z.F., M.S., and M.S.B.] were all plaintiffs in that civil suit.
> Okay.  And so there come an allegation that they were doing - -
> that these allegations arose because of money.
>
> And I will tell you that that civil suit has settled and they did
> receive money and it's in a locked account.  The children and their
> families do not have access to that money until the children are 18,
> and you will hear what those parents are intending to do with that
> money.  It's their children's money.  It's for them to decide what to
> do with that money: School, counseling.  Whatever they want to do
> with it.[111]

During Thomas's trial counsel's opening statement, he stated that "[t]his case is about revenge.

It's about money.  It is about manipulation, and it is about character."[112]

The civil lawsuit was next discussed during the prosecution's direct examination of April.

The state elicited that A.P. and Z.F. got "about $31,000" each from the settlement.[113]  During

cross examination, defense counsel asked if April had conversations with the civil attorneys

"[a]bout collecting money from this incident," and April responded, "[w]e had conversations

---

[109] *Id.* at 9–10.

[110] *Id.* at 10.

[111] *Id.* at 109–110.

[112] *Id.* at 141.

[113] ECF No. 4-4 at 148 (cleaned up).

28

with the attorneys about making sure that people were held accountable for their actions. There's no dollar amount that could ever replace what was happening to all four of these kids."[114]  Thomas's defense counsel then asked, "[a]nd there was no dollar amount but we know what the dollar amount is," and April responded, "[y]eah."[115]

The civil lawsuit was also discussed during Kay's testimony, Barbian's testimony, and Slattery's testimony.[116]  Further, Kids 'R' Kids owner and director Bonnie Hart, who explained that she was a representative for Kids 'R' Kids in the lawsuit, testified that "there was an order filed on August 22nd of 2014 where Kids 'R' Kids, LLC accepted responsibility or liability in that civil suit."[117]

During closing arguments, the state argued that there was no financial motive for the victims to accuse Thomas during the trial because the civil lawsuit had already been settled:

> In November of 2011, the preliminary hearing is held.  And in August of 2014, the civil suit is settled.
>
> So all financial gain at the inception of this trial is off the table. Nobody's getting anything else.  Th[e] kids got $32,000. Is $32,000 enough to get your kid touched?  Is $32,000 that parent can't control, can't touch?[118]

---

[114] *Id*. at 176.

[115] *Id*.

[116] ECF No. 4-12 at 105–106; ECF No. 5 at 140–142, 154–160; ECF No. 5-3 at 41–42.

[117] ECF No. 5-3 at 122–125, 159–161, 165–166.

[118] ECF No. 5-5 at 169.

### a.    The Nevada Court of Appeals concluded that counsel's decision not to object to discussions about the civil settlement did not amount to ineffective assistance.

In affirming the state court's denial of Thomas's state habeas petition, the Nevada Court of Appeals determined that Thomas's trial counsel had not acted deficiently in allowing the civil lawsuit settlement to be introduced at trial because it was a strategic decision:

> Fourth, Thomas claimed counsel was ineffective for failing to file a pretrial motion to preclude evidence of a settlement reached in a related civil action and for failing to object to the State's references to this settlement during trial. . . . The pretrial discussion indicated that counsel's decision not to file a pretrial motion to preclude the settlement was strategic in nature. Therefore, Thomas failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness. *See Lara v. State*, 120 Nev. 177, 180, 87 P.3d 528, 530 (2004) (stating "trial counsel's strategic or tactical decisions will be virtually unchallengeable absent extraordinary circumstances" (internal quotation marks omitted)).
>
> Moreover, the State did not imply that Thomas had previously been found guilty of the conduct alleged; rather, the State referenced the settlement to rebut the anticipated implication that the victims had a financial motivation to fabricate their claims of abuse. Thomas thus failed to demonstrate a reasonable probability of a different outcome but for counsel's failure to file a pretrial motion to preclude evidence of the settlement or to object to any references to the settlement. Accordingly, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing.[119]

### b.    Trial counsel's strategic decision not to object to evidence about the civil settlement does not amount to ineffective assistance.

There is no dispute that the introduction of the civil lawsuit had both favorable and unfavorable implications for the defense: the civil lawsuit supported the defense's theory that the accusations against Thomas were based on financial motivations, but it also implied a level of culpability. So Thomas's counsel was faced with weighing whether to embrace evidence of the

---

[119] ECF No. 6-15 at 5–6.

1 civil lawsuit or to move for its preclusion.  As defense counsel's pretrial statements demonstrate,

2 he was aware of this issue and the risks associated with making this decision, explaining that it

3 "cuts both ways."  Counsel then explained that he was "definitely" planning on asking witnesses

4 questions about the civil lawsuit.  As the Nevada Court of Appeals reasonably decided,

5 Thomas's trial counsel made a strategic decision to use the evidence to show bias rather than to

6 move for its preclusion.  This strategic decision to introduce this evidence to support the

7 defense's theory is entitled to deference and was not deficient.[120]

8        Turning to Thomas's second contention that his trial counsel failed to object to the state's

9 improper introduction of the settlement of the civil lawsuit, it is true that the state referenced the

10 civil lawsuit in its opening statement before the defense "opened the door" to the evidence.

11 However, the state requested a pretrial ruling from the trial court regarding whether it would be

12 allowed to mention the civil lawsuit in its opening statements, and the trial court agreed, stating

13 that the state could give basic details of the civil lawsuit during its opening statement because the

14 defense had already indicated that it planned to "definitely" question witnesses about it.

15        Thomas's trial counsel could have contested this pretrial ruling, but as the Nevada Court

16 of Appeals reasonably concluded, Thomas fails to demonstrate prejudice.  Because Thomas's

17 trial counsel had already made the decision to embrace the civil lawsuit, it is mere speculation

18 that the state's anticipatory rebuttal of the evidence—as compared to the state waiting for the

19 defense's impending introduction of it—changed the outcome of the trial.  So the Nevada Court

20

21 ─────────────

[120] *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law

22 and facts relevant to plausible options are virtually unchallengeable."); *Harrington*, 562 U.S. at 107 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance

23 limited resources in accord with effective trial tactics and strategies."); *Correll v. Ryan*, 539 F.3d 938, 948 (9th Cir. 2008) ("[U]nder *Strickland*, we must defer to trial counsel's strategic decisions.").

of Appeals' determination was neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts. Thomas is not entitled to federal habeas relief on ground three.

### 3. Thomas's ground-four claim that his counsel was ineffective for failing to preclude the introduction of prejudicial evidence does not warrant habeas relief.

In ground four, Thomas alleges that his trial counsel was ineffective when he failed to preclude highly prejudicial information from being introduced at trial.[121] Thomas points to two portions of April's testimony that he contends his trial counsel should have objected to. In the first, the state asked April whether her daughter "actually used the word 'humping'" to describe an instance of Thomas's abuse.[122] April responded yes, and the state asked her how her daughter knew that word.[123] April responded, "That was a word that we used around the house to identify good touch and bad touch with other children because that was one of our concerns at the time because [Thomas's] son was doing that."[124]

Later, when the defense was cross examining April about why she did not say anything to the police about finding discharge in her daughters' underwear while doing laundry, April replied:

> There were a lot [of] things that came to my attention once I was notified of what [Thomas] was doing to children. There was a lot [of] things that I sat back and remembered and there was some things that haven't been mentioned since I've been sitting here that I'm not sure that if you guys are aware of, and there are still things that come up.[125]

---

[121] ECF No. 1 at 37.

[122] ECF No. 4-4 at 136.

[123] *Id.*

[124] *Id.*

[125] *Id.* at 187.

1  Thomas contends that April's testimony about his son and the possibility that Thomas had

2  "committed other unknown acts" was irrelevant and highly prejudicial, and that trial counsel's

3  failure to object to those "improper comments" was unconstitutionally deficient.[126]

4         ***a.        The Nevada Court of Appeals held that Thomas failed to show that the
              probative value of April's testimony was outweighed by the danger of***

5              ***unfair prejudice.***

6         In affirming the state court's denial of Thomas's state habeas petition, the Nevada Court

7  of Appeals held that April's testimony did not amount to testimony about a bad act on Thomas's

8  part and that Thomas failed to show that the probative value of April's testimony was

9  substantially outweighed by the danger of unfair prejudice:

10            Fifth, Thomas claimed counsel was ineffective for failing to object
              to testimony that was improperly suggestive of prior bad acts.

11
              . . .

12            This testimony does not indicate Thomas committed a prior crime,
              wrong, or act.  Moreover, this testimony was brief, it did not go

13            into any details regarding Thomas' son's behavior or the other
              signs of abuse, and it did not suggest that any actions of Thomas'

14            son could be imputed to Thomas.  Thomas failed to demonstrate
              that the probative value of this testimony was substantially

15            outweighed by the danger of unfair prejudice.  *See* Nev. Rev. Stat.
              § 48.035(1).  Therefore, Thomas failed to demonstrate that his

16            counsel's performance fell below an objective standard of
              reasonableness or a reasonable probability of a different outcome

17            but for counsel's failure to object to this testimony.  Accordingly,
              we conclude the district court did not err by denying these claims

18            without conducting an evidentiary hearing.[127]

19

20

21

22

---

23  [126] ECF No. 1 at 38, 41.

    [127] ECF No. 6-15 at 6–7.

1

2

   **b.**  *Because Thomas has not shown that the testimony was unfairly*
      *prejudicial, his trial counsel was not ineffective for failing to object.*

3     The Nevada Court of Appeals reasonably concluded that Thomas failed to demonstrate

4 that the probative value of April's testimony about Thomas's son was substantially outweighed

5 by the danger of unfair prejudice.  Under Nevada law, relevant "evidence is not admissible if its

6 probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the

7 issues or of misleading the jury."[128]  Even if testimony of Thomas's son "humping" lacked

8 probative value beyond explaining how April's daughters knew what the word "humping"

9 meant, Thomas fails to show that he suffered unfair prejudice from this testimony.  It is

10 speculative that the jury would negatively impute Thomas's son's actions onto Thomas,

11 especially given that this testimony was minimal, lacked context, and was abandoned quickly.

12 So, even if Thomas's trial court had objected to this testimony as being unfairly prejudicial, he

13 fails to demonstrate that the trial court would have sustained the objection.

14     The Nevada Court of Appeals also reasonably concluded that Thomas failed to

15 demonstrate that April's allusion to instances of abuse that had not been charged indicated that

16 he committed a prior crime, wrong, or act.  Under Nevada law, "[e]vidence of other crimes,

17 wrongs[,] or acts is not admissible to prove the character of a person in order to show that the

18 person acted in conformity therewith."[129]  April did not explicitly testify that Thomas committed

19 other uncharged acts.  She merely suggested that she remembered other "things" that were

20 innocuous at the time but in hindsight may have signaled that the abuse had been occurring.  The

21 meaning of this testimony is ambiguous at best.  Indeed, it is not clear what "things" April was

22

---

23 [128] Nev. Rev. Stat. § 48.035(1).

[129] Nev. Rev. Stat. § 48.045(2).

even referring to.  Because Thomas fails to demonstrate that this testimony was even about other crimes, wrongs, or acts, he has not shown that April's answer was objectionable.

The Nevada Court of Appeals also reasonably concluded that Thomas failed to demonstrate that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice.  Like the testimony about Thomas's son's "humping," this testimony—even if it could be classified as being prejudicial—was nominal and lacked detail.  Additionally, Thomas's trial counsel, who was questioning April at the time this testimony was unintentionally solicited, immediately redirected the testimony back to April's faults by implying that April failed to take any action upon suspecting the alleged abuse.  Thomas's trial counsel's decision to steer April's spontaneous allusion away, rather than highlighting it for the jury by objecting, was reasonable.

In sum, the Nevada Court of Appeals' determination that Thomas's trial counsel was not ineffective for failing to object to these two instances of testimony was neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts.  Thomas is not entitled to federal habeas relief on ground four.

### 4.    *Thomas's ground-five contention that his trial counsel failed to object to hearsay statements does not warrant habeas relief.*

In ground five, Thomas alleges that his trial counsel was ineffective for failing to object to hearsay statements that the trial judge admitted under Nevada law.[130]  He contends that the testimony of forensic interviewers Martha Mendoza and Faiza Ebrahim, who testified about what

---

[130] ECF No. 1 at 42.

1 two of the victims told them during their interviews, was impermissible hearsay that his trial

2 counsel should have objected to.[131]

3      Outside the presence of the jury, the trial judge held evidentiary hearings for Mendoza

4 and Ebrahim under Nevada Revised Statute (NRS) 51.385, which allows for the introduction of

5 hearsay statements made by children under the age of 10 that describe acts of sexual conduct or

6 physical abuse.[132]  Ebrahim testified at her hearing that she interviewed M.S. and that M.S. "was

7 able to give [Ebrahim] descriptions of what specifically happened to her [by Thomas], what was

8 done to her body, . . . where she was at the time, how it occurred."[133]  Thomas's trial counsel

9 cross examined Ebrahim twice at that hearing.[134]  Following Ebrahim's testimony, the trial court

10 stated that it had "reviewed the testimony . . .  under the factors in NRS 51.385, as to whether the

11 statement by a child who . . . was under ten at the time, whether it can be admitted as a hearsay

12 statement and whether it was reliable under the totality of the circumstances."[135]  The trial court

13 then found "that the hearsay statement [was] reliable based on the totality of the circumstances

14 and the factors . . . in NRS 51.385 and that she was under the age of ten at the time so . . . [t]he

15 statute would apply."[136]

16      At Mendoza's NRS 51.385 hearing, Mendoza testified that she conducted a forensic

17 interview of M.S.B. and that M.S.B. told her about Thomas touching her.[137]  Thomas's trial

18

19 ───────────────

[131] *Id.*

20 [132] Nev. Rev. Stat. § 51.385.

21 [133] *Id.* at 112.

[134] *Id.* at 114–119, 121.

22 [135] *Id.* at 122–123.

23 [136] *Id.* at 123.

[137] ECF No. 5-3 at 25, 32.

counsel submitted the matter without cross examination.[138]  The trial judge indicated that she had

"taken into consideration the factors . . . under [NRS 51.385], subsection 2, A through E, as well

as the other testimony."[139]  The trial court then found "that [M.S.B.'s] hearsay statement to . . .

Mendoza was and had the indicia of trustworthiness, and . . . should be admitted under that

exception to the hearsay rule."[140]

> **a.      The Nevada Court of Appeals rejected Thomas's argument because the trial court did not err by permitting Mendoza's and Ebrahim's testimony.**

In affirming the state court's denial of Thomas's state habeas petition, the Nevada Court

of Appeals held that Thomas's trial counsel was not ineffective for not objecting to these

testimonies because the Nevada Supreme Court had previously held on direct appeal that the trial

court did not err in allowing them under NRS 51.385:

> Sixth, Thomas claimed counsel was ineffective for failing to object to hearsay statements admitted pursuant to NRS 51.385.  The statute allows for the admission into evidence of a young child's out-of-court statement regarding an act of sexual abuse where the trial court has found, in relevant part, "that the time, content and circumstances of the statement provide sufficient circumstantial guarantees of trustworthiness."  NRS 51.385(1)(a).  In determining whether a statement is sufficiently trustworthy, the trial court must consider whether (1) the statement was spontaneous, (2) the child was subjected to repetitive questioning, (3) the child had a motive to fabricate, (4) the child used terminology unexpected of a child of similar age, and (5) the child was in a stable mental state.  NRS 51.385(2).
>
> Thomas contended that two forensic interviewers improperly testified as to hearsay statements that "were of a repetitive and cumulative nature" and were not spontaneous but were made for the purpose of a criminal investigation.  He also contended this violated his right to confront the declarants.  Whether the

---

[138] *Id.* at 34.

[139] *Id.* at 35.

[140] *Id.*

statements were repetitive or cumulative of other evidence is not a factor in determining their admissibility under NRS 51.385.  And the Nevada Supreme Court previously concluded that "the [trial] court appropriately weighed the factors provided in NRS 51.385(2) in determining the trustworthiness of the statements."  *Thomas v. State*, No. 71044, 2019 WL 118403, at *3 (Nev. Jan. 4, 2019) (Order Affirming in Part, Reversing in Part, and Remanding).  This holding is the law of the case, *see Hall v. State*, 91 Nev. 314, 315, 535 P.2d 797, 798-99 (1975) ("The law of a first appeal is the law of the case on all subsequent appeals in which the facts are substantially the same." (quotation marks omitted)), and Thomas failed to demonstrate he fell into an exception to the application of this doctrine, *see Tien Fu Hsu v. County of Clark*, 123 Nev. 625, 630-32, 173 P.3d 724, 729-30 (2007).  Moreover, we note the declarants testified at trial and were subject to cross-examination.

Therefore, Thomas failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome but for counsel's failure to object to these statements.  Accordingly, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing.[141]

> **b.    The trial court properly applied NRS 51.385, so Thomas's counsel was not ineffective for failing to object to hearsay testimony that was permitted under that statutory hearsay exemption.**

Although Thomas's trial counsel did not object to Ebrahim's and Mendoza's testimonies like he did with the other witnesses who were permitted to testify about statements made by the child victims, the Nevada Court of Appeals reasonably concluded that Thomas failed to demonstrate that his trial counsel was ineffective.  As the Nevada Court of Appeals reasonably noted, on direct appeal the Nevada Supreme Court held that there was "no plain error in the district court's decision to allow forensic interviewers Ebrahim and Mendoza to testify regarding sexual abuse statements made by M.S. and M.A.S., as the district court appropriately weighed

---

[141] ECF No. 6-15 at 7–8.

the factors provided in NRS 51.385(2) in determining the trustworthiness of the statements."[142]

Accordingly, because the Nevada Supreme Court, the final arbiter of Nevada law, determined

that Ebrahim's and Mendoza's testimonies were permissible under Nevada law, Thomas fails to

demonstrate that his trial counsel was ineffective in not objecting to these testimonies. Because

the Nevada Court of Appeals' determination was neither contrary to, nor an unreasonable

application of, *Strickland* and was not based on an unreasonable determination of the facts,

Thomas is not entitled to federal habeas relief on ground five.

> **5.      *Thomas's ground-six contention that his counsel was ineffective for failing to object to two jury instructions does not warrant habeas relief.***

Thomas alleges in ground six that he received ineffective assistance when his trial

counsel failed to object to Jury Instructions 5 and 30—the reasonable-doubt instruction and the

equal-and-exact-justice instruction—because they minimized the state's burden of proof.[143] Jury

Instruction 5 instructed the jury on the definition of reasonable doubt:

> The Defendant is presumed innocent unless the contrary is proved.
> This presumption places upon the State the burden of proving
> beyond a reasonable doubt every element of the crime charged and
> that the Defendant is the person who committed the offense.
>
> A reasonable doubt is one based on reason. It is not mere possible
> doubt but is such a doubt as would govern or control a person in
> the more weighty affairs of life. If the minds of the jurors, after the
> entire comparison and consideration of all the evidence, are in such
> a condition that they can say they feel an abiding conviction of the
> truth of the charge, there is not a reasonable doubt. Doubt to be
> reasonable must be actual, not mere possibility or speculation.
>
> If you have a reasonable doubt as to the guilt of the Defendant, he
> is entitled to a verdict of not guilty.[144]

---

[142] ECF No. 6-14 at 5.

[143] ECF No. 1 at 44.

[144] ECF No. 2-6 at 13.

Jury Instruction 30 provided, in relevant part, that the jury's "purpose" was to enact "equal and exact justice between the Defendant and the State of Nevada."[145]

### a. The Nevada Court of Appeals held that the jury instructions were not erroneous.

In affirming the state court's denial of Thomas's state habeas petition, the Nevada Court of Appeals held that these jury instructions were proper statements of Nevada law:

> Seventh, Thomas claimed counsel was ineffective for failing to object to the trial court's reasonable doubt and "equal and exact justice" jury instructions. The instructions given were consistent with controlling authority. *See* NRS 175.211(2) (stating no other definition of reasonable doubt may be given than the statutory one); *see also Leonard v. State*, 114 Nev. 1196, 1209, 969 P.2d 288, 296 (1998) (holding the "equal and exact justice" instruction did not undermine the presumption of innocence or lessen the State's burden of proof). Therefore, Thomas failed to demonstrate that his counsel's performance fell below an objective standard of reasonableness or a reasonable probability of a different outcome but for counsel's failure to object to these jury instructions. *See Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) ("Trial counsel need not lodge futile objections to avoid ineffective assistance of counsel claims."). Accordingly, we conclude the district court did not err by denying this claim without conducting an evidentiary hearing.[146]

### b. Thomas has not shown that the jury instructions were constitutionally deficient, so his counsel was not ineffective for failing to object to them.

The Ninth Circuit Court of Appeals evaluated a nearly identical reasonable-doubt instruction in *Ramirez v. Hatcher*[147] and concluded that, "[a]lthough [it did] not herald the

---

[145] *Id*. at 38.

[146] ECF No. 6-15 at 8–9.

[147] The portion of Thomas's reasonable-doubt instruction in question here is identical to the reasonable-doubt instruction in *Ramirez*. *Compare* ECF No. 2-6 at 13 *with Ramirez v. Hatcher*, 136 F.3d 1209, 1210–11 (9th Cir. 1998).

Nevada [reasonable-doubt] instruction as exemplary, . . . the overall charge left the jury with an accurate impression of the government's heavy burden of proving guilt beyond a reasonable doubt" such that "the jury charge satisfied the requirements of due process."[148]  NRS 175.211 also required the trial court to use the language provided in Jury Instruction 5.[149]  Because the language used in the reasonable-doubt instruction has been found to be constitutional under Federal law and complies with Nevada law, the Nevada Court of Appeals reasonably found that Thomas failed to demonstrate that his trial counsel acted deficiently by not objecting to it.

Thomas's second argument that the equal-and-exact-justice instruction was erroneous is foreclosed by the Nevada Supreme Court's holding in *Leonard v. State* that such an instruction does not concern the state's burden of proof.[150]  Thomas also does not make any showing that the equal-and-exact-justice instruction conflicts with clearly established federal law.  He cites to *Sullivan v. Louisiana*, a Supreme Court case holding that a constitutionally deficient reasonable-doubt instruction cannot be harmless error because it vitiates all the jury's findings.[151]  But the equal-and-exact-justice instruction is not a reasonable-doubt instruction, nor does it lower the

---

[148] *Ramirez*, 136 F.3d at 1210-11, 1215; *see also Nevius v. McDaniel*, 218 F.3d 940, 944 (9th Cir. 2000) (holding that the reasonable-doubt instruction was identical to the one in *Ramirez*, so "[t]he law of this circuit thus forecloses Nevius's claim that his reasonable[-]doubt instruction was unconstitutional").

[149] Nev. Rev. Stat. § 175.211.

[150] *Leonard v. State*, 969 P.2d 288, 296 (Nev. 1998) ("Appellant contends that the district court denied him the presumption of innocence by instructing the jury to do 'equal and exact justice between the Defendant and the State of Nevada.'  This instruction does not concern the presumption of innocence or burden of proof.  A separate instruction informed the jury that the defendant is presumed innocent until the contrary is proven and that the state has the burden of proving beyond a reasonable doubt every material element of the crime and that the defendant is the person who committed the offense.  Appellant was not denied the presumption of innocence.").

[151] *Sullivan v. Louisiana*, 508 U.S. 275, 277–82 (1993).

state's burden of proof.[152]  Thomas fails to explain how that instruction is inconsistent with

*Sullivan*.  So, because Thomas fails to demonstrate that the equal-and-exact-justice instruction

violates state or federal law, the Nevada Court of Appeals reasonably found that Thomas's trial

counsel did not act deficiently by not objecting to it.  I thus conclude that the Nevada Court of

Appeals' determination was neither contrary to, nor an unreasonable application of, *Strickland*

and was not based on an unreasonable determination of the facts.  Thomas is therefore not

entitled to federal habeas relief on ground six.

### 6.    *Thomas's ground-seven cumulative-error claim fails.*

In ground seven, Thomas alleges that he is entitled to reversal of his convictions based on

the cumulative errors of his trial counsel.[153]  In affirming the state court's denial of Thomas's

state habeas petition, the Nevada Court of Appeals denied this claim because there were not

multiple errors to cumulate:

> Lastly, Thomas claimed that his conviction should be reversed due
> to the cumulative effect of counsel's errors.  Even assuming that
> any such errors may be cumulated, *see McConnell v. State*, 125
> Nev. 243, 259 n.17, 212 P.3d 307, 318 n.17 (2009), Thomas failed
> to demonstrate multiple errors to cumulate.  Accordingly, we
> conclude the district court did not err by denying this claim.  *See*
> *Burnside v. State*, 131 Nev. 371, 407, 352 P.3d 627, 651 (2015)
> (noting cumulative error claims require "multiple errors to
> cumulate").[154]

Cumulative error applies when, "although no single trial error examined in isolation is

sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still

---

[152] *See Leonard*, 969 P.2d at 296.

[153] ECF No. 1 at 45.

[154] ECF No. 6-15 at 9.

1  prejudice a defendant."[155]  Because I have identified only a single error—the trial court's

2  improper prohibition on Thomas's ability to present a defense by introducing evidence of April's

3  physical abuse of Z.F.—and that single error was not due to Thomas's trial counsel's actions,

4  there are no IAC errors to cumulate.  So the Nevada Court of Appeals' determination denying

5  this claim was neither contrary to, nor an unreasonable application of, federal law, and Thomas is

6  not entitled to federal habeas relief on ground seven.

**D.    A certificate of appealability is granted for ground one but denied for grounds two through seven.**

9        The right to appeal from the district court's denial of a federal habeas petition requires a

10  certificate of appealability.  To obtain that certificate, the petitioner must make a "substantial

11  showing of the denial of a constitutional right."[156]  "Where a district court has rejected the

12  constitutional claims on the merits," that showing "is straightforward: The petitioner must

13  demonstrate that reasonable jurists would find the district court's assessment of the constitutional

14  claims debatable or wrong."[157]

15        Applying these standards, I find that a certificate of appealability is warranted for ground

16  one.  Reasonable jurists could debate whether Thomas has demonstrated that the exclusion of

17  evidence of April's physical abuse of Z.F. had a substantial and injurious effect or influence in

18  determining the jury's verdict.  Although this evidence would not have applied to M.S. and

19  M.S.B., reasonable jurists could debate whether discrediting Z.F. and A.P. would have deflated

20

---

[155] *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996); *see also Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining that the court must assess whether the aggregated errors "'so infected the trial with unfairness as to make the resulting conviction a denial of due process'" (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

[156] 28 U.S.C. § 2253(c).

[157] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

1  the state's entire case against Thomas.  Because M.S. and M.S.B. came forward with their

2  allegations only after Thomas's arrest was broadcasted on the news and their mothers questioned

3  them about Thomas specifically, the jurors could have found their accusations less believable,

4  especially given their youth when the abuse occurred.  So, rather than finding that M.S.'s and

5  M.S.B.'s testimonies bolstered Z.F.'s and A.P.'s testimonies, reasonable jurists could find that

6  discrediting Z.F.'s and A.P.'s allegations may have upset the foundation of the case and made

7  M.S.'s and M.S.B.'s allegations more likely the result of suggestibility.  But I find that a

8  certificate of appealability is not warranted for the remaining grounds.

9  **E.      Thomas's request for an evidentiary hearing is denied.**

10          Thomas requests that this court hold an evidentiary hearing on his claims.[158]  In *Shinn v.*

11  *Ramirez*, the Supreme Court of the United States recently reinforced the rule that a federal

12  habeas court may not consider any facts beyond the factual record presented to the state

13  postconviction relief court unless one of the exceptions of 28 U.S.C. § 2254(e)(2) applies.[159]  And

14  here, I find that Thomas fails to demonstrate that an evidentiary hearing is available to him under

15  28 U.S.C. § 2254(e)(2).  I also find that further factual development would not affect my reasons

16  for denying relief in this matter.[160]  So I decline Thomas's request for an evidentiary hearing.

17                                      **Conclusion**

18          IT IS THEREFORE ORDERED that the petition **[ECF No. 1] is DENIED**.

19

20

21

---

22  [158] ECF No. 1 at 48.

23  [159] *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022).

   [160] *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record . . . otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

IT IS FURTHER ORDERED that a **certificate of appealability is GRANTED for ground one** and DENIED for the remaining grounds**.**

IT IS FURTHER ORDERED that **the Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
January 17, 2025